**SO ORDERED.**

**SIGNED this 19th day of July, 2010.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court

**Western District of Texas**
**El Paso Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| NANCY EOFF | 10-30625-C |
| DEBTOR | CHAPTER 7 |

## ORDER DENYING REAFFIRMATION AGREEMENT AND DECLARING SECURED CREDITOR'S RIGHTS

CAME ON for consideration the foregoing matter. The court disapproves the reaffirmation agreement between the debtors and Chase Home Finance, because the agreement was not timely filed, as required by section 524(c)(3) of title 11 and Rule 4008(a) of the Federal Rules of Bankruptcy Procedure. Thus, it cannot be approved.

Further, it appears that the reaffirmation agreement was not "made" prior to the entry of the debtor's discharge, as the lender did not sign the agreement until July 8, 2010, though the discharge was entered June 28, 2010. A reaffirmation agreement is a contract, and requires offer and acceptance. The debtor's signature is dated May 25, 2010. That would be the offer date. The contract was not made until it was accepted, as indicated by the signature of Chase Home Mortgage on July

8, 2010. Indeed, the signature of Chase is located immediately below the statement "Reaffirmation Agreement Terms Accepted by Creditor." A reaffirmation agreement must be made prior to the entry of a debtor's discharge in order to be valid. *See* 11 U.S.C. § 524(c)(1); *In re Herrera*, Bankr. Case No. 05-31649-C (slip op., at p. 5-6) (Bankr. W.D.Tex. Dec. 14, 2007); *see also Whitehouse v. LaRoche*, 277 F.3d 568, 574 (1st Cir. 2002); *Lichtenstein v.Barbanel*, 161 Fed. Appx. 461 (6th Cir. 2005); *In re Turner*, 156 F.3d 713, 718 (7th Cir. 1998); *Lee v. Yeutter*, 917 F.2d 1104, 1106 n.3 (8th Cir. 1990); *Republic Bank of Ca. v. Getzoff (In re Getzoff)*, 180 B.R. 572, 574-75 (9th Cir. B.A.P. 1995); *Schott v. WyHy Fed.Credit Union (In re Schott)*, 282 B.R. 1, 7 (10th Cir. B.A.P. 2002). As this court observed in *Herrera*,

> Because reaffirmation agreements are effectively waivers of discharge with respect to a particular creditor, they are exceptions to the "fresh start" policy of the bankruptcy process. As such, the reaffirmation exception is strictly construed, and the requirements imposed for their enforceability are themselves enforced rigidly. *See Matter of Duke*, 79 F.3d at 44; *In re Jamo*, 283 F.3d 392, 398 (1st Cir. 2002) (citations omitted); *see also In re Bennett*, 298 F.3d 1059, 1067 (9th Cir. 2002) (citing *Republic Bank of Cal. v. Getzoff (In re Getzoff)*, 180 B.R. 572, 574 (9th Cir. B.A.P. 1995)).

*Herrera*, slip op., at p. 6. This reaffirmation agreement was not made until after the entry of discharge. It is by definition not valid. Thus, it is not approved on this ground as well.

Notwithstanding such denial, the court finds and concludes that the creditor holds a valid and enforceable *in rem* claim. The creditor is accordingly expressly authorized and permitted to enforce the obligation of the debtor to the creditor as an *in rem* obligation, such enforcement rights to specifically include the right to notify the debtor of payments that are or are to become due either orally or in writing (including the right to send regular payment statements, payment booklets, and the like), the right to demand payment when such payments are not made (either in full or in part), the right to threaten resort to *in rem* remedies in the event of non-payment, the right to accelerate the indebtedness incident to enforcement of *in rem* remedies, the right to give notice of foreclosure

sale, the right to initiate judicial or nonjudicial foreclosure as an *in rem* remedy, and the right to conduct and complete (either directly or indirectly) such foreclosure sale, so long as all of the foregoing are conducted in accordance with the terms of the indebtedness, and further in accordance with applicable non-bankruptcy law. None of the foregoing shall ever constitute a violation of the discharge injunction entered in this case pursuant to section 524(a) of title 11.

Further, the creditor is authorized and permitted to communicate with the debtor regarding the status of the account, either orally or in writing, and the debtors are authorized and permitted to obtain information from the creditor, either orally or in writing, regarding the status of the account. The creditor is authorized and permitted to afford to the debtor the same services with respect to this account as they would enjoy had there been no bankruptcy, including, as applicable, internet access to the account, the use of electronic funds transfers as a means of payment, and the right to receive regular billing statements and regular escrow updates. The provision of all such services shall never constitute a violation of the discharge injunction entered in this case pursuant to section 524(a) of title 11.

Further, the creditor is authorized and permitted to renegotiate the terms of the indebtedness with the debtor (provided that such renegotiated indebtedness shall remain solely an *in rem* liability of the debtor), to provide payoff amounts for the purposes of any refinancing with a third party, or for the purposes of a sale of the underlying property. The provision of any of the foregoing shall never constitute a violation of the discharge injunction entered in this case pursuant to section 524(a) of title 11.

Once the creditor has enforced its *in rem* remedies, the creditor is barred by the discharge injunction from taking any steps to further enforce the obligation, as an *in personam* liability of the debtor, either directly or indirectly, by judicial action or otherwise.

# # #